UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

In the Matter of the Search Regarding    No. **4:20-mj-28**

20-033-04                                 **SEARCH AND SEIZURE WARRANT**

TO:    ANY AUTHORIZED LAW ENFORCEMENT OFFICER

An application by a federal law enforcement officer requests the search of the ▮▮▮▮ accounts fully described in Attachment A, attached hereto and incorporated herein by reference.

I find that the affidavit, or any recorded testimony, establish probable cause to search the ▮▮▮▮ accounts described in Attachment A, and that the use of such an investigative technique will reveal evidence of violations of 21 U.S.C. §§ 841(a)(1) – Distribution of a Controlled Substance Resulting in Serious Bodily Injury or Death. The information to be seized is detailed in Attachment B, attached hereto and incorporated herein by reference.

**YOU ARE COMMANDED** to execute this warrant on or before
**4-2-2020** _____ (not to exceed 14 days)
☒ in the daytime – 6:00 a.m. to 10:00 p.m.
☐ at any time in the day or night as I find reasonable cause has been established.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the undersigned Judge.

Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. §§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized,

for 30 days from _____.

until, the facts justifying, the later specific date of _____.

**3-19-2020 at 9 am CDT** at Sioux Falls, South Dakota
Date and Time Issued

_____
VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE

cc Mumenga and Agent

## "REDACTED" ATTACHMENT A

### PROPERTY TO BE SEARCHED

This warrant applies to information associated with the accounts identified as:



that are stored at premises owned, maintained, controlled, or operated by ▬▬▬ a company headquartered at ▬▬▬ ▬▬▬

## "REDACTED" ATTACHMENT B

## PARTICULAR THINGS TO BE SEIZED

I.     **Information to be disclosed by** ▇▇▇▇▇▇▇. **(the "Provider") for the time period** ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

To the extent that the information described in Attachment A is within the possession, custody, or control of ▇▇▇▇▇▇ including any messages, records, files, logs, or information that have been deleted but are still available to ▇▇▇▇▇▇ or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), ▇▇▇▇▇▇ is required to disclose the following information to the government for the user ID listed in Attachment A:

(a)   All contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, ▇▇▇▇▇ passwords, ▇▇▇▇▇ security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)   All physical location data collected by ▇▇▇▇▇▇ for the user of the account, including any data collected by ▇▇▇▇▇▇ location services via the user's mobile phone or other device, on a real-time or near-time basis. ▇▇▇▇▇▇ is required to provide any such data they collect, regardless of the time of day.

(c)   All activity logs for the account and all other documents showing the user's posts and other ▇▇▇▇▇▇ activities;

1

(d) All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(e) All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' ▮▮▮ user identification numbers; groups and networks of which the user is a member, including the groups' ▮▮▮ group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of ▮▮▮ applications;

(f) All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending ▮▮▮ requests;

(g) All "check ins" and other location information;

(h) All IP logs, including all records of the IP addresses that logged into the account;

(i) All records of the account's usage of the "Like" feature, including all ▮▮▮ posts and all ▮▮▮ webpages and content that the user has "liked";

(j) All information about the ▮▮▮ pages that the account is or was a "fan" of;

(k) All past and present lists of friends created by the account;

(l) All records of ▮▮▮ searches performed by the account;

2

(m) All information about the user's access and use of ▮▮▮▮ Marketplace;

(n) The types of service utilized by the user;

(o) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p) All privacy settings and other account settings, including privacy settings for individual ▮▮▮▮ posts and activities, and all records showing which ▮▮▮▮ users have been blocked by the account;

(q) All records pertaining to communications between ▮▮▮▮ and any person regarding the user or the user's ▮▮▮▮ account, including contacts with support services and records of actions taken.

II. **Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 21 U.S.C. § 841 & 846 Conspiracy to Possess With Intent to Distribute a Controlled Substance involving others, since the creation of the SUBJECT ACCOUNTS, including information pertaining to the following matters:

(a) Records relating to who created, used, or communicated with the accounts, including records about their identities and whereabouts;

3

(b) Communications between ▮▮▮▮▮▮ and others not yet identified, regarding drug transactions and financial transactions.

(c) Information relating in any way to the transfer of money from the United States to Mexico or any foreign country;

(d) Information related to bank account records, wire transfer records, bank statements and records, money drafts, letters of credit, and financial transfers;

(e) lists of customers and contacts and related identifying information;

(f) types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

(g) any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

(h) any information recording schedule or travel;

(i) Information pertaining to assets owned or under the control of the owners of the accounts being searched, including but not limited to Vehicle Identification Numbers (VINs), serial numbers and/or other identification numbers of assets;

(j) Photographs and/or videos, in particular, photographs and/or videos of co-conspirators, assets, and for controlled substances.

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

In the Matter of the Search Regarding   No. 4:20-MJ-28

20-033-04   **"REDACTED" APPLICATION FOR SEARCH AND SEIZURE WARRANT**

I, Jorge A. Carrasco, being duly sworn depose and say:

I am an Intelligence Agent with the United States Border Patrol, currently assigned to the Drug Enforcement Administration Sioux Falls Regional Office as a Task Force Agent, and have reason to believe that within the ▮▮▮▮ accounts fully described in Attachment A, attached hereto and incorporated herein by reference, in the District of South Dakota, there is now concealed certain property, namely that fully described in Attachment B, attached hereto and incorporated herein by reference, which I believe is property constituting evidence of the commission of criminal offenses, contraband, the fruits of crime, or things otherwise criminally possessed, or property designed or intended for use or which is or has been used as the means of committing criminal offenses, concerning violations of 21 U.S.C. §§ 841(a)(1) – Distribution of a Controlled Substance Resulting in Serious Bodily Injury or Death.

The facts to support a finding of Probable Cause are contained in my Affidavit filed herewith.

Jorge A. Carrasco, Task Force Agent
Drug Enforcement Administration

Sworn to before me, and subscribed in my presence on the 19th day of March, 2020, at Sioux Falls, South Dakota.

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

In the Matter of the Search Regarding:

20-033-04

Case No. 4:20-MJ-28

**"REDACTED" AFFIDAVIT IN SUPPORT OF SEARCH AND SEIZURE WARRANT**

STATE OF SOUTH DAKOTA)
:SS
COUNTY OF MINNEHAHA)

I, Jorge A. Carrasco, being duly sworn on oath, depose and say:

**INTRODUCTION**

I am an Intelligence Agent for the United States Border Patrol, currently assigned to the Drug Enforcement Administration Sioux Falls Regional Office as a Task Force Agent. I am a commissioned law enforcement agent of the United States Border Patrol, assigned to the Sioux Falls Drug Enforcement Administration (DEA) Regional Office and cross-commissioned by the Special Agent in Charge of the Omaha Field Division. I have been a United States Border Patrol Agent for over 20 years. I attended and graduated from the United States Border Patrol Academy at the Federal Law Enforcement Training Center located in Glynco, Georgia on April 17, 1998. I attended a basic narcotic identification course at the Border Patrol Academy. Since my employment with the Border Patrol, as an Agent and a K-9 Handler I have been involved in hundreds of narcotic investigations. I have completed an 80 hour Criminal Justice Training Center Undercover Operations course conducted by the Seattle Police Department. I have also completed the Drug Enforcement Administration basic course consisting of 80 hours. The courses for both of these academies have included instruction in the identification, manufacture, and investigation of illegal narcotics and other drugs.

Since my assignment to the DEA and several other drug task force units, I have been involved in numerous narcotics investigations, including undercover operations, purchasing narcotics, identifying narcotics, surveillance, and case management. During my training and past experiences, I know that cocaine, methamphetamine and heroin can be extremely profitable. Persons who

1

possess, manufacture and distribute cocaine, methamphetamine and heroin obtain substantial proceeds from their illegal enterprise in violation of Controlled Substances statutes. They will record their financial activities in writing or within computers that require keys or pass codes or other such means to gain access. I am familiar with the provisions of Title 21 and 18 of the United States Code. I have been working drug trafficking cases since 2003.

## PURPOSE OF AFFIDAVIT

1. I make this affidavit in support of an application for a search warrant for information associated with ▮▮▮▮ accounts fully described in Attachment A, attached hereto and incorporated herein by reference ("SUBJECT ACCOUNTS"), that are stored at premises owned, maintained, controlled, or operated by ▮▮▮▮ a social networking company, and provider of electronic communications and remote computing services, headquartered at ▮▮▮▮[1] (the "PROVIDER" or "▮▮▮▮").

2. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require ▮▮▮▮ to disclose to the government copies of records and other information in its possession (including the content of communications) described in Section II of Attachment B, attached hereto and incorporated herein by reference. Upon receipt of the information described in Section II of Attachment B, law enforcement agents and/or individuals assisting law enforcement and acting at their direction will review that information to locate the items described in Section III of Attachment B.

3. As described more fully below, I respectfully submit there is

---

[1] Because this Court has jurisdiction over the offenses being investigated, it may issue the warrant to compel the PROVIDER pursuant to 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A). See 18 U.S.C. §§ 2703(a) ("A governmental entity may require the disclosure by a provider . . . pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure . . . by a court of competent jurisdiction") and 2711 ("the term 'court of competent jurisdiction' includes -- (A) any district court of the United States (including a magistrate judge of such a court) or any United States court of appeals that -- (i) has jurisdiction over the offense being investigated; (ii) is in or for a district in which the provider of a wire or electronic communication service is located or in which the wire or electronic communications, records, or other information are stored; or (iii) is acting on a request for foreign assistance pursuant to section 3512 of this title").

2

probable cause to believe that the information associated with SUBJECT ACCOUNTS constitutes evidence or instrumentalities of criminal violations of 21 U.S.C. §§ 841(a)(1) – Distribution of a Controlled Substance Resulting in Serious Bodily Injury or Death.

## SUMMARY OF INVESTIGATION

4.Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence of violations of United States Code are located within the SUBJECT ACCOUNTS.



On ▮▮▮ Sioux Falls Police Department (SFPD) Detectives ▮▮▮ Detectives located various drug paraphernalia in the bathroom where ▮▮▮ These items were; a ▮▮▮

On ▮▮▮

7.A cell phone download of ▮▮▮ revealed several conversations regarding drug purchases. There were two phone numbers in particular concerning drug related conversations. These phone numbers were ▮▮▮; both of these numbers have been identified as having belonged to ▮▮▮. During the conversations from both phone numbers, the sender identified themselves as ▮▮▮

8.On ▮▮▮, DEA TFA Carrasco was notified by the DEA office in ▮▮▮ and the connection to ▮▮▮ TFA Carrasco had initiated an investigation into ▮▮▮. TFA Carrasco had previously spoken to ▮▮▮

3

had died from an overdose [REDACTED]. [REDACTED] would not provide [REDACTED] phone or information about who [REDACTED] had purchased heroin from on the day or the day before her death.

9. On [REDACTED] TFA Carrasco and DCI Special Agent Tanner Stindtman met with and [REDACTED] reiterated what he had previously told [REDACTED] and further recalled having gone to the [REDACTED] on at least one occasion with [REDACTED] to purchase heroin from [REDACTED] would also utilize [REDACTED]. [REDACTED] provided [REDACTED]. [REDACTED] also stated [REDACTED] had his own [REDACTED] account under the name of [REDACTED]

10. I have conducted a search of [REDACTED], and have found [REDACTED] is under the name of [REDACTED]

11. Based on my training and experience I know persons involved with drug trafficking often communicate with sources of supply and customers via social media messaging in order to elude detection by law enforcement.

12. Based on my training and experience I know persons involved with drug trafficking often create and use pseudonyms on social media in order to elude detection by law enforcement.

13. Based on my training and experience, I know that it is common for people involved in the sale, distribution and use of illegal drugs to keep records of their customers and suppliers, sometimes in electronic devices.

14. I know based on my training and experience that even if long-time drug traffickers stop distributing controlled substances, either voluntarily or under law enforcement pressure, these traffickers often retain in their possession many items with evidentiary value, including names, addresses and telephone numbers of associates; documents related to financial transactions; and other items as listed in this affidavit.

**TECHNICAL BACKGROUND REGARDING [REDACTED]**

15. [REDACTED] owns and operates a free-access social networking website of the same name that can be accessed at [REDACTED] allows its users to establish accounts with [REDACTED], and users can then use their accounts to share written news, photographs, videos, and other information with other [REDACTED], and sometimes with the general public.

16. ▮▮▮▮ asks users to provide basic contact information to ▮▮▮▮, either during the registration process or thereafter. This information may include the user's full name, birth date, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

17. ▮▮▮▮ users can select different levels of privacy for the communications and information associated with their ▮▮▮▮ accounts. By adjusting these privacy settings, a ▮▮▮▮ user can make information available only to himself or herself, to particular ▮▮▮▮ users, to all ▮▮▮▮ users, or to anyone with access to the Internet, including people who are not ▮▮▮▮ users. ▮▮▮▮ accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from ▮▮▮▮.

18. ▮▮▮▮ users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. A ▮▮▮▮ user can also connect directly with individual ▮▮▮▮ users by sending each user a ▮▮▮▮. If the recipient of a ▮▮▮▮ accepts the request, then the two users will become ▮▮▮▮ for purposes of ▮▮▮▮ and can exchange communications or view information about each other. Each ▮▮▮▮ user's account includes a list of that user's ▮▮▮▮ and a ▮▮▮▮ which highlights information about the user's ▮▮▮▮ such as profile changes, upcoming events, and birthdays.

19. ▮▮▮▮ users can create profiles that include photographs, lists of personal interests, and other information. ▮▮▮▮ users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. ▮▮▮▮ users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. A particular user's profile page also includes a ▮▮▮▮ which is a space where the user and his or her ▮▮▮▮ can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

20. ▮▮▮▮ has a Photos application, where users can upload an unlimited number of albums and photos. Another feature of the Photos application is the ability to "tag" (i.e., label) other ▮▮▮▮ users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For ▮▮▮▮ purposes, a user's "Photoprint" includes all photos uploaded by that user that have not been deleted, as well as all photos uploaded by any user that have that user tagged in them.

5

21. ▆▆▆▆ users can exchange private messages on ▆▆▆▆ with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on ▆▆▆▆ which also stores copies of messages sent by the recipient, as well as other information. ▆▆▆▆ users can also post comments on the ▆▆▆▆ profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

22. ▆▆▆▆ is a blogging feature available to ▆▆▆▆ users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

23. The ▆▆▆▆ Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. ▆▆▆▆ users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

24. ▆▆▆▆ also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

25. In addition to the applications described above, ▆▆▆▆ also provides its users with access to thousands of other applications on the ▆▆▆▆ platform. When a ▆▆▆▆ user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

26. ▆▆▆▆ uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: friend lists; groups and networks of which the user is a member; "News Feed" information; "Wall" postings; "Notes"; status updates; links to videos, photographs, articles, and other items; event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of ▆▆▆▆ applications.

27. ▆▆▆▆ also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs contain information about the actions taken by the user ID or IP address on ▆▆▆▆ including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a ▆▆▆▆ profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

28. Social networking providers like ▇ typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, ▇ users may communicate directly with ▇ about issues relating to their account, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like ▇ typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

29. Therefore, the records of ▇ are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of ▇ such as account access information, transaction information, and account applications for SUBJECT ACCOUNTS.

## INFORMATION TO BE SEARCHED AND ITEMS TO BE SEIZED

30. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require ▇ to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

31. Based on the foregoing, I request that the Court issue the requested search warrant.

_____
Task Force Agent Jorge A. Carrasco
Drug Enforcement Administration

Sworn to before me, and subscribed in my presence on the 19th day of March, 2020, at Sioux Falls, South Dakota.

_____
VERONICA DUFFY
UNITED STATES MAGISTRATE JUDGE

# "REDACTED" ATTACHMENT A

## PROPERTY TO BE SEARCHED

This warrant applies to information associated with the accounts identified as:



that are stored at premises owned, maintained, controlled, or operated by ▮▮▮▮▮ a company headquartered at ▮▮▮▮▮ ▮▮▮▮▮

## "REDACTED" ATTACHMENT B

## PARTICULAR THINGS TO BE SEIZED

I.    **Information to be disclosed by** ▇▇▇▇▇▇. **(the "Provider") for the time period** ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

To the extent that the information described in Attachment A is within the possession, custody, or control of ▇▇▇▇ including any messages, records, files, logs, or information that have been deleted but are still available to ▇▇▇▇ or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), ▇▇▇▇ is required to disclose the following information to the government for the user ID listed in Attachment A:

    (a)    All contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, ▇▇▇▇ passwords, ▇▇▇▇ security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

    (b)    All physical location data collected by ▇▇▇▇ for the user of the account, including any data collected by ▇▇▇▇ location services via the user's mobile phone or other device, on a real-time or near-time basis. ▇▇▇▇ is required to provide any such data they collect, regardless of the time of day.

    (c)    All activity logs for the account and all other documents showing the user's posts and other ▇▇▇▇ activities;

1

(d) All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(e) All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' ▓▓▓▓ user identification numbers; groups and networks of which the user is a member, including the groups' ▓▓▓▓ group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of ▓▓▓▓ applications;

(f) All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending ▓▓▓▓ requests;

(g) All "check ins" and other location information;

(h) All IP logs, including all records of the IP addresses that logged into the account;

(i) All records of the account's usage of the "Like" feature, including all ▓▓▓▓ posts and all ▓▓▓▓ webpages and content that the user has "liked";

(j) All information about the ▓▓▓▓ pages that the account is or was a "fan" of;

(k) All past and present lists of friends created by the account;

(l) All records of ▓▓▓▓ searches performed by the account;

2

(m) All information about the user's access and use of ▮▮▮▮ Marketplace;

(n) The types of service utilized by the user;

(o) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p) All privacy settings and other account settings, including privacy settings for individual ▮▮▮▮ posts and activities, and all records showing which ▮▮▮▮ users have been blocked by the account;

(q) All records pertaining to communications between ▮▮▮▮ and any person regarding the user or the user's ▮▮▮▮ account, including contacts with support services and records of actions taken.

II. **Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 21 U.S.C. § 841 & 846 Conspiracy to Possess With Intent to Distribute a Controlled Substance involving others, since the creation of the SUBJECT ACCOUNTS, including information pertaining to the following matters:

(a) Records relating to who created, used, or communicated with the accounts, including records about their identities and whereabouts;

3

(b) Communications between ▮▮▮▮▮▮▮ and others not yet identified, regarding drug transactions and financial transactions.

(c) Information relating in any way to the transfer of money from the United States to Mexico or any foreign country;

(d) Information related to bank account records, wire transfer records, bank statements and records, money drafts, letters of credit, and financial transfers;

(e) lists of customers and contacts and related identifying information;

(f) types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

(g) any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

(h) any information recording schedule or travel;

(i) Information pertaining to assets owned or under the control of the owners of the accounts being searched, including but not limited to Vehicle Identification Numbers (VINs), serial numbers and/or other identification numbers of assets;

(j) Photographs and/or videos, in particular, photographs and/or videos of co-conspirators, assets, and for controlled substances.